UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ANTHONY L. JONES, *et al*,

                       Plaintiffs,

       v.

FULTON BANK, N.A., *et al.*,

                     Defendants.

Civil Action No. 3:13-CV-126

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on a Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Fulton Bank, N.A. ("Fulton Bank" or "Defendant")(ECF No. 5.) The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J). For the following reasons, the Court GRANTS Defendant's Motion.

## I.  BACKGROUND[1]

On July 18, 2007, Plaintiffs Anthony L. Jones and Cheryse D. Glenn Jones entered into a home mortgage loan for a residence in Chesterfield County, Virginia. Resource Bank, which later merged into Defendant Fulton Bank, was Plaintiffs' lender. The loan was evidenced by a Note and secured by a Deed of Trust. Paragraph 20 of the Deed of Trust provides that neither the borrowers nor the lender may sue to enforce the Deed of Trust

---

[1] For the purposes of this Motion, the Court assumes all of Plaintiffs' well-pleaded allegations to be true, and views all facts in the light most favorable to Plaintiffs. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004)(citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). *See* Fed. R. Civ. P. 12(b)(6).

without first giving the other party notice of the alleged breach of the Deed of Trust and a reasonable period of time after the notice to correct the breach. (Compl. Ex. B (hereinafter "Deed of Trust") ¶ 20.) Further, in the event of the borrowers' breach, Paragraph 22 of the Deed of Trust provides that the lender will give notice specifying the default, the actions needed to cure the default, a date by which the default must be cured, and an explanation that a failure to cure by the specified date may result in acceleration of the loan and the sale of the property.  (*See* Deed of Trust ¶ 22.)  Paragraph 22 also requires that the date by which the borrowers must cure the default be no less than thirty (30) days from the date the notice is given. *Id.* Similarly, Paragraph 7(C) of the Note entitles the Note holder to demand repayment of the full unpaid amount upon the borrowers' default if the overdue payments are not made by a certain date, and provides that the Note holder may first send written notice to the borrowers. (*See* Compl. Ex. A (hereinafter "Note") ¶ 7(C).)   The notice must specify a date after which full repayment may be requested that is at least thirty (30) days after the mailing or delivery of the written notice. *Id.*

Plaintiffs ultimately "fell into arrears on the note." (Compl. ¶ 10.) On December 21, 2010, Defendant mailed a notice (hereinafter "Notice Letter") to Plaintiffs asserting that Plaintiffs breached the terms of their loan by failing to make their monthly payments. (*See* Compl. Ex. C.) The Notice Letter asserted that Plaintiffs were in default in the amount of $55,232.57 for the monthly payments owed between April 2009 and December 2010, but noted that the amount was subject to final verification. *Id.* However, Plaintiffs "made all payments due throughout 2009 and for part of 2010." (Compl. ¶ 17.)

Defendant instructed Samuel I. White, P.C. ("White") to act as substitute trustee, and acting as such, White scheduled a foreclosure sale for March 29, 2011. Plaintiffs filed suit in

the Circuit Court for Chesterfield County, Virginia on March 29, 2011 seeking a declaratory judgment that Defendant was not entitled to foreclose on the home. Plaintiffs also recorded a *lis pendens* in the public land records. White canceled the foreclosure sale upon Plaintiffs' request, and accordingly, Plaintiffs obtained a non-suit of this state court matter.

Defendant subsequently instructed White to foreclose on the property a second time and White scheduled a foreclosure sale for December 27, 2011. Plaintiffs filed a second lawsuit in the Circuit Court for Chesterfield County seeking declaratory judgment and recorded a *lis pendens*. White canceled this second foreclosure sale upon Plaintiffs' request, and Plaintiffs then obtained a non-suit of their second state court action.

Defendant eventually instructed White to foreclose on the home a third time. Accordingly, White published an advertisement for general circulation in Chesterfield County advertising that a foreclosure sale for the property was scheduled for June 5, 2012. On June 5, 2012, White conducted a foreclosure sale of the property in which Defendant made the highest bid. White then transferred title of the property to Defendant by trustee's deed. On July 13, 2012, Defendant obtained an unlawful detainer summons against Plaintiffs, and on September 17, 2012, the General District Court of Chesterfield County entered an order awarding Defendant possession of the home. Plaintiffs appealed to the Circuit Court of Chesterfield County, but ultimately reached an agreement in which Defendant was awarded possession of the home but actual eviction would be suspended pending the outcome of Plaintiffs' case before this Court. Plaintiffs were also ordered by the Circuit Court to post a monthly bond of $1,700, with Defendant holding the right to seek a writ of possession if Plaintiffs fail to post the monthly bond.

In Count One, Plaintiffs allege that Defendant breached the Note and Deed of Trust

because Defendant failed to send Plaintiffs a notice letter in compliance with Paragraph 7(C) of the Note and Paragraph 22 of the Deed of Trust. Specifically, Plaintiffs argue that the Notice Letter that Defendant sent materially overstated the amount that was owed, and therefore, was not a proper 30-day cure notice as required by the Note and Deed of Trust.

In Count Two, Plaintiffs allege that Defendant breached the provisions of the Deed of Trust allowing the lender to appoint a substitute trustee, requiring the trustee to give public notice of a foreclosure sale by advertising, and requiring that the lender and the substitute trustee comply with all applicable laws when foreclosing on the property. Plaintiffs allege that the two-page document purporting to show White's appointment as substitute trustee is "a bogus document" because the second page shows a staple mark that is not present on the first page, indicating that the parties signed only the second page and Defendant later added the first page to the document. (Compl. ¶ 54; *id.* Ex. D.) Plaintiffs assert that the second, signed page "contained no appointive language" and did not appoint White as substitute trustee. (Compl. ¶¶ 54-55.) Accordingly, Plaintiffs allege that White had no authority to conduct the foreclosure sale and violated several Virginia statutes in doing so.[2] Therefore, Plaintiffs allege in Count Two that Defendant breached the Deed of Trust by instructing White to foreclose on the home as substitute trustee and by identifying White

---

[2] Plaintiffs cite the following statutes as the applicable law: Va. Code Ann. § 55-59(9)("The party secured by the deed of trust . . . shall have the right and power to appoint a substitute trustee or trustees for any reason . . . by executing and acknowledging an instrument designating and appointing a substitute."); Va. Code. Ann. § 55-59.2 (requiring that a trustee seeking to execute a deed of trust advertise the foreclosure sale in a newspaper in general circulation in the city or county where the property is to be sold, subject to specified provisions); Va. Code Ann. § 55-59.3 (requiring that advertisements of foreclosure sales identify the trustee, party secured, or his agent or attorney as the person who can respond to inquiries about the sale); Va. Code Ann. § 55-59.1 (providing that if the note is lost, the trustee can still proceed with the foreclosure sale only if the lender submits an affidavit to the trustee explaining that the note or other proof of indebtedness is lost).

as the substitute trustee in the advertisements for the foreclosure sale.

In Count Three, Plaintiffs assert that, by the actions alleged in Counts One and Two, Defendant has breached an implied covenant of good faith and fair dealing in the Note and Deed of Trust. Plaintiffs assert that the foreclosure sale is void, or alternatively voidable, and that they consequently have superior title. Plaintiffs therefore seek an order quieting title as well as damages for the alleged breaches in Counts One, Two, and Three.

Defendant filed its Motion to Dismiss on April 8, 2013. Defendants argue that Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6) on the following grounds: (1) Plaintiffs have acknowledged in the state court proceedings that the Notice Letter was accurate, and even if this notice did materially overstate the amount in arrears, Plaintiffs do not allege any harm from this alleged breach; (2) Plaintiffs do not have standing to challenge White's appointment as substitute trustee, and even if they did, Virginia law does not require the instrument of appointment to be intact when executed; (3) Virginia does not recognize an independent cause of action for breach of implied duty of good faith and fair dealing; (4) Plaintiffs have not alleged that they have satisfied their obligations under the Note and Deed of Trust, and thus cannot seek quiet title. Plaintiffs have responded in opposition, but ask for leave to amend in the event that the Court grants the Motion. The motion has been fully briefed and this matter is now ripe for review.[3]

---

[3] On April 16, 2013, White filed a Motion to Dismiss Plaintiffs' Complaint as to him in particular. (ECF No. 8.) On June 11, 2013, the parties submitted a Joint Stipulation of Dismissal dismissing White as a defendant without prejudice. The Court ordered White's dismissal without prejudice on June 14, 2013. (ECF No. 19.) Accordingly, the Court hereby DENIES White's Motion to Dismiss as MOOT.

## II.      LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must therefore accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). The Court may consider the complaint, its attachments, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 540 U.S. at 545; *see id*. at 555 n.3. The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III.    DISCUSSION

### A.  Count One: Breach of Note and Deed of Trust for Failure to Send Proper Notice Letter

Plaintiffs argue that Defendant breached the Note and Deed of Trust because the Notice Letter materially overstated the amount owed by asserting that Plaintiffs failed to pay their monthly payments from April 2009 to December 2010. While Plaintiffs acknowledge that they fell into arrears on their loan obligations, they allege that they paid the amounts due "throughout 2009 and for part of 2010." (Compl. ¶17.) Accordingly, Plaintiffs argue that the Notice Letter materially overstated the amount of default, and thus did not comply with Paragraph 7(C) of the Note and Paragraph 22 of the Deed of Trust.

However, Count One fails because even if Defendant did breach the agreement by materially overstating the amount owed, Plaintiffs have not sufficiently alleged that they were harmed by this purported breach. A party alleging breach of contract under Virginia law must establish that the defendant owed the plaintiff a legally enforceable obligation, the defendant violated that obligation, and the plaintiff suffered injury or damage as a result of the defendant's breach. *See Filak v. George*, 594 S.E. 2d 610, 619 (Va. 2004). Further, "[a] material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154 (2001). "The essential purposes of a deed of trust are two-fold: to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes." *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 732 (2012).

There is some support for the proposition that, under Virginia law, a plaintiff who

alleges that her lender materially overstated the amount in arrears in a pre-acceleration notice has stated a breach of contract claim. In *Vazzana v. Citimortgage, Inc.*, the Western District of Virginia found that the plaintiff sufficiently pled that her bank breached the notice provisions of the note and deed of trust by sending her a pre-acceleration notice listing the amount in arrears as $5,194.00 rather than the $2,537.74 that the plaintiff claimed she actually owed. *See Vazzana v. Citimortgage, Inc.*, 7:12CV00497, 2013 U.S. Dist. LEXIS 78541, at * 5 (W.D. Va. June 4, 2013).

While the notice in *Vazzana* definitively stated the amount owed without qualification (*see id.* Am. Compl. Ex. C, ECF No. 23), the Notice Letter in this case stated, immediately after listing the amount in default, that: "**THIS AMOUNT IS SUBJECT TO FINAL VERIFICATION**" (Notice Letter)(emphasis in original). The Notice Letter further advised Plaintiffs: "You should obtain the current amount in default by calling our Virginia Beach office . . . prior to sending any funds." *Id.* In contrast with *Vazzana*, Plaintiffs' claim that the Notice Letter in this case breached the Note and Deed of Trust by materially overstating the amount due is undermined by the qualifications in the notice that the amount listed may not remain accurate, and that Plaintiffs were to verify the final amount before sending any payments. While it is likely that Defendant anticipated that the amount owed would only increase over time, by instructing the borrowers to verify the amount due before sending any funds, Defendant clearly placed the borrowers on notice that the amount listed in the Notice Letter might ultimately misstate the final amount actually due. This difference in language distinguishes the present case from *Vazzana*, thus it is unclear that *Vazzana* supports Plaintiffs' argument that they have sufficiently alleged a breach.

Additionally, the claim that Defendant materially overstated the amount owed by

asserting that Plaintiffs were in default for the monthly payments due from April 1, 2009 to December 1, 2010 is considerably undermined by Plaintiffs' admissions in the pending Chesterfield County Circuit Court matter that "[t]he [Plaintiffs] did not directly make any payment on the said note after April 1, 2009." (Def.'s Reply Ex. 1 ¶¶ 5, 6, 12.) This Court may take judicial notice of official public records, such as state court records, that are pertinent to the plaintiff's claims, even if they are not "quoted, relied upon, or incorporated by reference in the complaint." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995). However, "the document must be one of unquestioned authenticity." *Id.* Although Plaintiffs have not questioned the authenticity of these admissions, this is likely due to the fact that Defendant attached the admissions to its reply in support of the Motion to Dismiss rather than to the initial memorandum in support of the Motion, thus giving Plaintiffs no opportunity to respond in the normal course of the briefings. Further, it does not appear that these admissions were actually filed in the Circuit Court, thus it is unclear whether this document may properly be considered a state court record of unquestioned authenticity.

However, the Court need not decide whether Plaintiffs have sufficiently alleged a breach in this case because they have certainly failed to sufficiently allege that they were harmed by the purported breach. In *Vazzana*, the plaintiff sufficiently pled harm when she alleged that if the pre-acceleration notice had accurately stated the amount owed, she would have been able to raise this amount through her own funds and by borrowing from family members. *Vazzana*, 2013 U.S. Dist. LEXIS 78541, at *5-6. Vazzana did not attempt to raise the purportedly inflated amount, however, because she did not believe that she could do so within 30 days and "she knew that she was being threatened with foreclosure based on a grossly inflated statement of what was in arrears." *Id.*

In this case, Plaintiffs do not claim that they would have been able to pay the amount they believe they owe, that they overpaid based on the alleged misstatement, or that they paid any amount whatsoever in an attempt to cure the default. Therefore, even if the Notice Letter materially overstated the amount due, Plaintiffs have not alleged that they suffered any harm as a result. Accordingly, the Court GRANTS the Motion to dismiss Count One.

**B.  Count Two: Breach of Deed of Trust for Failure to Properly Appoint Substitute Trustee**

In Count Two, Plaintiffs argue that White was never properly appointed as substitute trustee, and therefore, Defendant breached the Deed of Trust by instructing White to conduct the foreclosure sale and allowing White to identify himself in the advertisements of the foreclosure sale as the substitute trustee. Paragraph 24 of the Deed of Trust authorized the lender to appoint a substitute trustee and Paragraphs 16 and 22 of the Deed of Trust required the trustee or substitute trustee to comply with all applicable laws in advertising and executing the foreclosure sale or otherwise enforcing the Deed of Trust. Specifically, Plaintiffs assert that Va. Code Ann. § 55-59(9) requires that a document appointing a substitute trustee be signed and contain appointive language. Plaintiffs allege that Defendant  failed to comply with § 55-59(9) and that White was never authorized to foreclose on the property because the document naming him as substitute trustee was a bogus document, as indicated by staple marks on the signed, second page of the document but not on the unsigned, first page.

Count Two of Plaintiffs' Complaint fails because Plaintiffs lack standing to challenge White's appointment as substitute trustee. Federal courts only have jurisdiction to hear cases or controversies where the plaintiff has standing to raise the claim asserted. *See* U.S. Const. Art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff has

standing if: (1) the plaintiff has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a decision in the plaintiff's favor. *See Lujan*, 504 U.S. at 560-61. The plaintiff "bears the burden of proving these three elements by alleging sufficient facts in its complaint." *Douglas v. Branch Banking & Trust Co.*, No. 3:12cv854, 2013 U.S. Dist. LEXIS 55122, at *9-10 (E.D. Va. Apr. 17, 2013)(internal citations omitted).

In this case, Plaintiffs claim that they have suffered the following injuries due to the allegedly ineffective appointment of White: loss of record ownership of the home; loss of quiet enjoyment; damage to creditor records and consequent economic loss; considerable inconvenience; potential liability for a deficiency judgment; and generally the costs of litigation. However, Plaintiffs have not shown that there is a causal connection between any of their purported injuries and White's appointment as substitute trustee. Once Plaintiffs defaulted on their loan, Defendant was within its rights to proceed with foreclosure in accordance with the Note and Deed of Trust. Therefore, regardless of whether White was properly appointed as substitute trustee, the injuries Plaintiffs complain of stem from their own failure to make their monthly payments. This lack of a causal connection is made further apparent by the fact that Defendant sought to appoint White as trustee on December 20, 2010 (*see* Compl. Ex. D), by which time, Plaintiffs had already defaulted by failing to pay the total amount due through 2010 (*see* Compl. ¶ 17.) Accordingly, the event that actually triggered Plaintiffs' alleged injuries—their own default on the loan—occurred *before* Defendant attempted to substitute White as trustee. Thus, Plaintiffs have failed to show causality. *See Douglas*, 2013 U.S. Dist. LEXIS 55122, at *14 ("To make the case that the Substitution of Trustee was the causal force behind [plaintiffs'] alleged injuries rather than

their own default (and [Defendant's] allegedly insufficient notice), the [plaintiffs] would have to plead that the Substitution of Trustee occurred before the default.")

It is further clear that, given Plaintiffs' default and their apparent failure to make any payments to cure the default, the injuries alleged would not be redressed by the proper appointment of a substitute trustee. This is because "the validity of the assignments does not effect [sic] *whether* Borrower owes its obligations, but only *to whom* Borrower is obligated." *Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings L.L.C.*, 717 F.Supp.2d 724, 735(E.D. Mich. 2010)(emphasis in original). Thus, even if the Court entered an order quieting title and reversing this foreclosure sale, Plaintiffs would remain in default and Defendant would remain entitled to proceed with foreclosure upon correcting any defects in the appointment documents. *Greene v. LNV Corp.*, No. 3:12cv780, 2013 U.S. Dist. LEXIS 57185, at *16 (E.D. Va. Apr. 16, 2013)(finding that plaintiffs failed to demonstrate redressability because reversing the foreclosure would likely only delay the inevitable foreclosure since plaintiffs were admittedly in default on the note). Indeed, it seems probable that Defendant would immediately proceed with foreclosure again after addressing any flaws in the appointment documents given that Defendant has already initiated foreclosure on Plaintiffs' home on three separate occasions.

For these reasons, Plaintiffs have not sufficiently shown causality or redressability, and thus lack standing to challenge White's appointment. *See Douglas*, 2013 U.S. Dist. LEXIS 55122, at *14-15 (holding that plaintiffs lacked standing to challenge the appointment of the substitute trustee because they failed to show causation or redressability); *Greene*, 2013 U.S. Dist. LEXIS 57185, at *13-17(same)*; Bennett v. Bank of Am., N.A.,* 3:12CV34-HEH, 2012 U.S. Dist. LEXIS 54725, at *21-22 (E.D. Va. Apr. 18, 2012)(finding that a borrower

lacked standing because he was not a party to the appointment agreement and did not allege any way in which the method used to execute the appointment document harmed him, or that the document misrepresented the intentions of the bank and the substitute trustee).[4] Accordingly, the Court GRANTS the Motion to Dismiss Count Two.

### C.   Count Three: Breach of Implied Covenant of Good Faith and Fair Dealing

In Count Three, Plaintiffs argue that Defendant violated an implied duty of good faith and fair dealing contained in the Note and Deed of Trust because it "foreclos[ed] on the home without authority to do [so] because no proper pre-acceleration notice had been sent and on the basis of a bogus purported apportionment of substitute trustee." (Pls.' Opp. Mem. 20.) Accordingly, Plaintiffs maintain that Defendant exercised its discretion in accelerating the loan in bad faith by taking the actions alleged in Counts One and Two— materially overstating the amount due and failing to properly appoint White as substitute trustee. Plaintiffs therefore argue that the foreclosure sale is void or voidable due to Defendant's breaches of the implied covenant of good faith and fair dealing.

"Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; *however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action.*" *Albayero v. Wells Fargo Bank, N.A.*, 3:11CV201-HEH, 2011 U.S. Dist. LEXIS 114974, at *15(E.D. Va. Oct. 5, 2011)(quoting *Frank Brunckhorst Co., L.L.C. v.*

---

[4] Even if Plaintiffs did have standing to challenge White's appointment, this claim would fail because Plaintiffs do not cite any legal authority for the proposition that Va. Code Ann. § 55-59(9) requires all of the pages of a document appointing a substitute trustee to be stapled or bound together when it is signed in order for the appointment to be valid. *See Wolf v. Fannie Mae*, 830 F.Supp.2d 153, 165 (W.D. Va. 2011)(holding that the plaintiff's assertion that the pages of a document appointing a substitute trustee were not attached when the second page was signed was inadequate on its own to support a claim that the appointment was invalid). Furthermore, an examination of the appointment document at issue plainly reveals that Count Two is factually implausible because there are, in fact, identically placed staple marks on both pages of the document.

*Coastal Atlantic, Inc.*, 542 F.Supp.2d 452, 462 (E.D. Va. 2008))(emphasis added). *See Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996)("[T]he failure to act in good faith . . . does not amount to an independent tort.") In this case, Plaintiffs attempt to assert a separate cause of action for breach of an implied duty of good faith and fair dealing, and thus they have not stated a claim upon which relief may be granted under Virginia law.

Further, as this Court recently reaffirmed in *Bagley v. Wells Fargo Bank, N.A.*, even if Plaintiffs had alleged a breach of contract claim stemming from a failure to act in good faith and fair dealing, Virginia law "does not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the Uniform Commercial Code (U.C.C.), and the U.C.C. expressly excludes the transfer of realty from its provisions." *Harrison v. US Bank National*, 3:12CV224, 2012 U.S. Dist. LEXIS 85735, at *5-6 (E.D. Va. June 20, 2012)(quoting *Greenwood Assocs. Inc. v. Crestar Bank*, 448 S.E.2d 399 (1994))(internal quotation marks omitted); *see* Va. Code Ann. § 8.9A-109(d)(11). *See also Bagley v. Wells Fargo Bank, N.A.* No. 3:12cv617, 2013 U.S. Dist. LEXIS 11880, at *19-20 (E.D. Va. Jan. 29, 2013)(citing *Harrison*); *Belote v. Bank of Am., N.A.*, 3:12cv526, 2012 U.S. Dist. LEXIS 178971, at *20 (E.D. Va. Dec. 18, 2012)(same). Simply put, "*the Uniform Commercial Code does not apply to foreclosures*," and therefore, "no implied covenant of good faith and fair dealing applies in this case." *Kramer v. Chase Home Fin., L.L.C.*, 83 Va. Cir. 382, 384 (Va. Cir. Ct. 2011)(emphasis added). The Court therefore GRANTS the Motion to Dismiss Count Three.

## D.  Action to Quiet Title

With respect to each of their claims, Plaintiffs argue that the foreclosure sale is void or voidable due to Defendant's alleged conduct, and therefore, that Plaintiffs have superior title to the home, subject to the lien of the Deed of Trust. Accordingly, Plaintiffs ask the

Court to enter an order quieting title. In Virginia, "[a]n action for quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against the title." *Maine v. Adams*, 277 Va. 230, 238 (Va. 2009). To assert a claim for quiet title, the plaintiff must plead that he has fully satisfied all legal obligations to the party in interest. *Tapia v. U.S. Bank*, 718 F. Supp. 2d 689, 700 (E.D. Va. 2010), *aff'd* 441 F. App'x 166 (4th Cir. 2011)(plaintiffs' quiet title claim failed where plaintiffs did not allege that they fully satisfied their obligations or make any factual showing that the debt was otherwise forgiven or canceled). *See also Bagley,* 2013 U.S. Dist. LEXIS 11880, at *24-25(same); *Matanic v. Wells Fargo Bank, N.A.*, No. 3:12cv472, 2012 U.S. Dist. LEXIS 134154, at *22 (E.D. Va. Sept. 19, 2012)(same); *Blick v. Wells Fargo Bank, N.A.*, No. 3:11cv81, 2010 U.S. Dist. LEXIS 41266, at * 13-14 (W.D. Va. Mar. 27, 2012)(same). In this case, Plaintiffs admit that they fell into arrears and do not allege that they have since satisfied their obligations. Accordingly, any claim for quiet title fails under Virginia law.

### E.  Plaintiffs' Request for Leave to Amend

In their opposition to the Motion to Dismiss, Plaintiffs request leave to amend the Complaint in the event that the Court grants Defendant's Motion. A party may amend its pleadings once as a matter of course, and thereafter, with the written consent of the opposing party or the court's leave. Fed. R. Civ. P. 15(a). The court "should freely give leave when justice so requires," *id.*, and "'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426-27 (4th Cir. 2006)(internal citations omitted); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend "should only be denied as futile if a proposed amendment

advances a claim or defense that is frivolous or legally deficient on its face," *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). *See U.S. ex. Rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

In this case, Defendant opposes Plaintiffs' request for leave to amend. Although it is unclear that amendment would be prejudicial or that there is any bad faith, for the aforementioned reasons, it is apparent that any amendment would likely be futile. Furthermore, Plaintiffs have failed to file a motion for leave to amend, submit a proposed amended complaint, or indicate what changes they would make such that an amended complaint would survive a motion to dismiss. The Court need not evaluate Plaintiffs' two-sentence request for leave to amend in its opposition memorandum as if it were a properly filed motion for leave to amend. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008)(district court did not abuse its discretion in declining to grant leave to amend where the plaintiffs did not file a motion, but rather, only asked for leave to amend in their opposition to a motion to dismiss and objections to the magistrate judge's report). For these reasons, the Court in its discretion DENIES Plaintiffs' request for leave to amend.

## IV.    CONCLUSION

For the above reasons, the Court GRANTS Defendant's Motion and DISMISSES Plaintiffs' Complaint. In addition, the Court DENIES Plaintiffs' request for leave to amend the Complaint.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___18th___ day of July 2013.

16